U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED LAFAYETTE

JAN 10 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

Mitchell                                                                     Civil Action No. 12-02151

versus                                                                       Judge Richard T. Haik, Sr.

David M. Vieth, D.D.S., et al                                    Magistrate Judge C. Michael Hill

## MEMORANDUM RULING

Before the Court is defendant David M. Vieth, D.D.S., APC d/b/a Kool Smiles' ("Kool Smiles" or "the Company") Motion For Summary Judgment [Rec. Doc. 29]; David M. Vieth's Motion For Summary Judgment [Rec. Doc. 30]; and defendant Kool Smiles' Motion For Summary Judgment On Its Counterclaim [Rec. Doc. 31], all filed on October 16, 2013. On November 13, 2013, plaintiff, Jamila Mitchell filed a Motion For Extension of Time to File Response/Reply to all of the foregoing Motions For Summary Judgment, *R. 50*, which was opposed by defendants, *R. 52*. Despite being filed at least five (5) days past the response deadline, the Court granted plaintiff's motion on November 15, 2013 extending the deadline to November 26, 2013. *R. 59*. On November 26, 2013, plaintiff filed her responses in opposition to defendants' motions. [Rec. Doc. 62, 63, 64]. Because plaintiff's response to Kool Smiles' Motion For Summary Judgment was 48 pages, 23 pages over the page limit set by L.R. 7.9, the Court denied plaintiff's Motion for Leave to Exceed the Page Limit. *R. 67*. Defendant David M. Vieth filed a Reply Memorandum on December 18, 2013. [Rec. Doc. 74]. As of the date of this Memorandum Ruling and Judgment, plaintiff has failed to re-file her Response in Opposition to Kool Smiles' Motion For Summary Judgment. Because plaintiff technically filed an opposition and exhibits in support to Kool Smiles' motion, the Court has read plaintiff's brief and the exhibits in support in their entirety and has considered plaintiff's noncompliant opposition memorandum and the exhibits attached thereto in this memorandum ruling.

*Background*

Plaintiff, Jamila Mitchell, an African-American female, was employed by Kool Smiles, a collaborative of dental practices in sixteen states that are owned by individual dentists but operated under the trade name of Kool Smiles. Kool Smiles provides dental care to under served populations, primarily children. Plaintiff worked for Kool Smiles from June 15, 2009 through October 25, 2011 as an Associate Dentist. On July 12, 2010, plaintiff was transferred from the Ft. Smith, Arkansas office to the Lafayette, Louisiana office where she remained until her termination.

In May 2011, the company received several complaints about the plaintiff from clinic staff. An investigation revealed that Dr. Yvondia Scott and the plaintiff had difficulty getting along, which caused division amongst the staff. Plaintiff was counseled but not formally reprimanded for the complaints against her and Dr. Scott left the company in June 2011. While investigating the complaints about her, plaintiff complained to the investigators John Finney, HR Business Partner, and Rebecca Higginbotham, Clinical HR Business Partner, that her supervisor, Dr. Ben Kim, Regional Director of Clinical Operations of Texas and Louisiana based out of San Antonio, Texas, made racist comments to her while visiting the clinic in early February 2011. Finney requested that plaintiff filed a written complaint and an investigation was performed. *R. 29, Exh. 6.* While the investigation found no violation of the company's anti-discrimination policies, Kim was counseled to maintain professional communications with all staff and was prohibited from saying anything that someone may find to be offensive toward a protected trait. *R 29, Exh. 1, Vieth Dec.; Exh. 4, Finney Dec.*

Plaintiff applied for a position as a state dental director. *R. 29, Exh. 1, Vieth Dec.* A state dental director is responsible for assisting with doctor training on an as needed basis but generally performs the same work as an associate dentist and is compensated at the same pay

2

rate. *Id.* When training is performed, the dentist receives a stipend for this activity, presumably because he/she loses production bonus opportunities while spending time training. *Id.* The intent is to keep the dentist whole, not to give extra pay. *Id.* During her February 2011 screening interview for the position, plaintiff alleges that Andrea Jett, Director of Recruiting, asked plaintiff about childcare arrangements because the job required travel. Plaintiff was interviewed by Vieth in March 2011. *Id.* Vieth also interviewed another female candidate, Dr. Brenda Donato. *Id.* Vieth did not hire either plaintiff or Donato because he did not believe either was qualified for the position. *Id.* The position remained open until September 2011 when it was filled by Dr. Shawna Steele Battier, an African-American female. *Id.*

Thereafter, plaintiff admittedly filed no further complaints of discrimination, harassment or retaliation against Kim. *R. 29, Exh. 2, Plaintiff's Depo. pp. 126-128*. On July 18, 2011, plaintiff provided a one line written notice of resignation effective November 29, 2011. Thereafter, on October 11, 2011, plaintiff was given a warning after she left work early on October 5, 2011 to close on her house without first complying with established company procedures. *R. 29, Exh. 9; Exh. 2, Plaintiff's Depo., pp. 83-85*. Plaintiff's absence caused patients to be rescheduled or canceled. *R. 29, Exh. 1, Vieth Dec.* On October 25, 2011, after receiving more complaints about plaintiff, Vieth terminated her. *Id.*

Plaintiff filed an EEOC charge on March 27, 2012, alleging discrimination on the basis of her race, sex, disability and retaliation for engaging in protected activity. *R. 29, Exh. 9*. A no cause finding was issued on May 31, 2013 and plaintiff filed this action on August 10, 2012 in the Fifteenth Judicial Court, Lafayette Parish, Louisiana, asserting causes of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.*, 42 U.S.C. § 1981, the Louisiana Employment Discrimination Act ("LEDA"), La. R.S. 23:323,

3

Louisiana's Whistleblower Act, La. R.S. 23:967, as well as defamation, for discrimination, retaliation and harassment "on the basis of race, age, pregnancy and disability." *R. 1*. The action was removed to this Court on August 10, 2012.

*Summary Judgment Standard*

Summary judgment is appropriate when there are no genuine issues as to any material facts, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–323 (1986). A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor." *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir.1990). The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim. *Id.* The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See Celotex*, 477 U.S. at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1996).

In an employment discrimination case, the Court must "focus on whether a genuine issue exists as to whether the defendant intentionally discriminated against the plaintiff." *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 447–48 (5th Cir.1996). The Court "must draw all reasonable inferences in favor of the nonmoving party, and [the Court] may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000).

*Analysis*

*A. The Motions For Summary Judgment Against Plaintiff's Claims*

Plaintiff has alleged the same causes of action against Vieth, an employee with the title Executive Dental Director for Kool Smiles, as she alleged against the Company, under Federal law – Title VII 42 U.S.C. § 1981[1] and the ADA, and under Louisiana state law – LDEA, and Whistleblower Act As there is no cause of action for individual liability for employees under any of these statutes, the Court will dismiss plaintiff's discriminatory and retaliatory claims against Vieth and will consider plaintiff's claims in this regard against the Company only. The Court will address plaintiff's state defamation claim as to Vieth.

*I. Title VII Claims*

*Hostile Work Environment*

A hostile work environment based on sex or race may be a violation of Title VII. "Such a violation occurs when the plaintiff proves she (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on sex or race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. Harassment affects a term, condition, or privilege of employment if it is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment. Workplace conduct is not measured in isolation. In order to deem a work environment sufficiently hostile, all of the circumstances must be taken into consideration. This includes the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir. 2012)(internal quotations and citations omitted). The plaintiff must demonstrate not merely sporadic conduct, but

---

[1] Although Title VII's EEOC charge process does not apply to a section 1981 claim, when analyzing a claim for discrimination under both Title VII and § 1981, the analysis under both statutes is identical. *Jones v. Robinson Prop. Grp. L.P.*, 427 F.3d 987, 992 (5th Cir.2005).

rather that the workplace is "permeated with discriminatory intimidation, ridicule and insult . . . sufficiently severe or pervasive to alter the conditions of [the plaintiff's] employment and create an abusive working environment." *Roberts v. Texas Dept. of Human Serv.*, 275 F.3d 1083 (5th Cir. 2001) (the plaintiff "must prove more than just a few isolated incidents of racial enmity"). Moreover, a plaintiff's own subjective belief of discrimination, however genuine, cannot form the basis of judicial relief. *Lawrence v. Univ. of Tex. Med. Branch at Galveston*, 163 F.3d 309, 313 (5th Cir. 1999); *Hayatdavoudi v. Univ. of Louisiana*, 240 F.3d 1073 (5th Cir. 2000).

The record indicates that Kim was based in San Antonio, Texas and traveled to his assigned clinics in Louisiana and Texas periodically. *R. 29-3, Vieth Declaration; R. 29-2, Plaintiff's Depo., pp. 124:18 - 125:3*. In early February 2011, plaintiff met Kim in person for the first time when he was visiting the Lafayette office. During the visit plaintiff contends that Kim made the following comments to her while in Lafayette: (1) "Is that your real hair? I thought it was short like mine." (2) "I have baby mamas in all four corners." (3) "I grew up [in] upstate [New York] [in the] Bronx, around the corner from Jay-Z." (4) "Turn it to the hip hop station because that's all they're used to listening to." *R. 29-4, Plaintiff's Depo., pp. 199-204*.

Plaintiff has failed to articulate any connection between Kim's alleged comments and her belief that they were based on racial or gender discrimination. Prior to his visit, plaintiff felt she and Kim got along well. *Id., p. 201:1-7*. After Kim allegedly made the comments, plaintiff stated that he did not say or do anything that was offensive to plaintiff's race or gender for the remainder of her employment. *Id., pp. 107:16-19; 233:15 - 234:6*. Plaintiff further stated that neither Vieth, nor anyone else, made offensive comments toward her race or gender. *Id., p. 113:15-21*.

Even assuming the alleged comments were offensive to African-Americans or women, the jurisprudence is clear that, as a matter of law, this does not create a hostile work environment under Title VII. The "mere utterance of an . . . epithet which engenders offensive feelings in an employee . . . does not . . . implicate Title VII." *Harris*, 510 U.S. at 21; *see also White v. Gov't Employees Ins. Co.*, 457 Fed. Appx. 374, 380 (5th Cir. 2007) (off-hand comments and isolated incidents insufficient to state Title VII violation). Moreover, plaintiff concedes that the Company provided her with a

copy of its anti-harassment policy upon her hiring and investigated her allegation against Kim in May 2011. *R. 29-14, Anti-Harrassment Policy; R. 29-4, p. 129:6-12.* No other allegations of this kind were ever lodged against Kim by plaintiff or any employee, and plaintiff never brought forth any further claims of harassment for the Company to investigate. *Id., pp. 126:25 - 127:11, 128:19 - 129:20; R. 29-9. Thompson Declaration.*

The Court finds there is no basis to hold defendant liable under Title VII or Section 1981 for what clearly amounts to four stray, off-hand remarks, which defendant addressed and which never reoccurred. *See Burlington Indust., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. Boca Raton*, 524 U.S. 775, 807 (1998) (employer not liable for alleged harassment by a supervisor when it exercised reasonable care to prevent and correct any harassing behavior and the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities provided).

*Pregnancy Discrimination*

"The Pregnancy Discrimination Act, which amended Title VII, prohibits employers from discriminating against a female employee "because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes ... as other persons not so affected but similar in their ability or inability to work. The Pregnancy Discrimination Act 'has been interpreted to provide equal treatment for pregnant women, not preferential treatment.' 42 U.S.C. § 2000e(k)." *Johnson v. Acosta*, 2011 WL 4381706, 8 (E.D.La. ,2011)(internal citations omitted).

Plaintiff was pregnant when she transferred from Ft. Smith to Lafayette in July 2010. She gave birth September 17, 2010. *R. 29-4, Plaintiff's Depo., p. 188:2-13, 19-25.* Plaintiff alleges when she applied for an area dental director position in February 2011, she was asked by Andrea Jett, female Director of Recruiting in Atlanta, whether she could arrange childcare because the job required some travel. Plaintiff was not pregnant at the time of her interview with Jett, she never complained of pregnancy discrimination, was not told that having a child would prevent her from getting the job and plaintiff conceded that she did not believe her pregnancy was the reason she was not chosen for the job. *Id., p. 199:17-24.* While the court does not perceive plaintiff to have a

7

pregnancy discrimination claim under these circumstances, because she was a female with a young child the Court will address her claim as follows.

The court analyzes a Pregnancy Discrimination Act claim in the same way that it analyzes a Title VII discrimination claim. When a plaintiff relies on circumstantial evidence to prove pregnancy discrimination, as in this case, her claim is analyzed under the *McDonnell Douglas* framework[2]. "To establish a prima facie case of pregnancy discrimination with circumstantial evidence, plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) others not in the protected class who are similarly situated were more favorably treated." *Acosta*, at 11.

For purposes of summary judgment, defendant concedes plaintiff has met the first and third prongs of the test. Plaintiff fails, however, to establish she was qualified and she has not presented someone outside of her protected class that was treated more favorably. Even if plaintiff could overcome these two hurdles, she has presented no evidence of pretext. She has made no causal connection between Jett's question and Vieth's decision not to promote her to the area dental director position. Rather, she testified that she and Vieth had a good working relationship. *R. 29-4, Plaintiff's Depo., p. 73:9-13.* Vieth stated that the company had hired other women with children for positions that required travel and named at least seven female directors as examples. During the interview in question Vieth interviewed plaintiff separately from Jett and had no knowledge of Jett's childcare inquiry. *Id., p. 223:3-5; 29-1, Vieth Dec.* Vieth also interviewed another female candidate for the job, Dr. Brenda Donato, an Associate Dentist from Ft. Smith. *Id.* Vieth stated he was unaware of whether or not Donato was a parent. *Id.* On March 28, 2011, Vieth sent an email to Jett notifying her that he was not going to hire either Donato or Mitchell for the position because he did not believe either was qualified. *Id.* The job remained open until September 2011, when it was filled by Dr. Shawna Steele Battier, an African-American female. *R. 29-13, 9/2/11 email.* By this time, plaintiff had already submitted her resignation.

---

[2] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

**8**

Employers may ask questions regarding family circumstances, if they are asked of all applicants whose ability to perform a certain job may be impacted. *Bruno v. City of Crown Point*, 950 F.2d 355, 364-65 (7th Cir. 1991). In order to prevail on a pregnancy discrimination claim, plaintiff must prove Jett only directed this question to women and Vieth based his decision on the sex stereotype implicit in this question. *Id.* at 365. The Court finds plaintiff has presented no such evidence and defendant is therefore entitled to dismissal of this claim.

*Retaliation Claim*

In May 2011, defendant received several written complaints from staff that worked with plaintiff in Lafayette. *R. 29-5, Written complaints from Guy, Begnaurd, Howard, Honore, Savoy; R. 29-6, Finney Dec.* The complaints included, among other things, that plaintiff was racist, treating staff unfairly, causing disruptions in the office, allowing a doctor who was not an employee to access confidential and proprietary information, leaving patients on nitrous oxide for extended periods of time, directing untrained staff to administer nitrous oxide, and refusing to see patients. *Id.*

Nichole Thompson, Director of Human Resources, sent Finney and Higginbotham to Lafayette to investigate the complaints about plaintiff. *R. 29-7, Thompson Dec.* When they met with plaintiff on May 17, 2011 to discuss the allegations against her, she complained, for the first time, about racist comments made to her by Kim to her in February 2011. *R. 29-6, Finney Dec.* At that time, she was asked to provide additional information about her claim. *Id.* Plaintiff provided additional information on May 23rd and 24th–which was considered before the investigation concluded. Both Kim and plaintiff were counseled relevant to the complaints against them, but neither was formally disciplined. *R. 29-6, Finney Dec.*; *R. 29-7, Thompson Dec.*

Plaintiff initially alleged that she complained to a recruiter in Atlanta, Renee Baron, shortly after Kim's visit in February 2011. *R. 1, ¶ 12.* She now claims that Vieth should have known about her alleged complaint to Baron in February 2011. Plaintiff has produced no record evidence to demonstrate that Vieth learned of her allegations before she reported them to John Finney and Rebecca Higginbotham on May 17, 2011. Rather, the record indicates that Vieth learned of these allegations while Finney and Higginbotham were in Lafayette investigating the complaints about

9

plaintiff after she reported Kim's comments from February. Subsequently, plaintiff forwarded a series of emails to Finney and Higginbotham for their investigation, which she also copied to Vieth. *R. 29-4, Plaintiff's Depo., pp. 103:25-106:1, 112:19-113:21.* Moreover, the communications between plaintiff and Vieth in March 2011 contain no mention of the alleged incident with Kim. *R. 29-4, Plaintiff's. Depo., pp. 109:1-111:4; R. 31, Ex. H, March 3-5, 2011 text messages; Ex. I, March 21-22, 2011 email; Ex. J, March 24, 2011 email.* Vieth confirmed he had no knowledge of plaintiff's complaint against Kim before this time. *R. 29-3, Vieth Dec.*

A plaintiff establishes a *prima facie* case of retaliation by showing: she engaged in a protected activity; an adverse employment action occurred; and there was a causal link between the protected activity and the adverse action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 657 (5th Cir. 2012) (citations omitted). If the plaintiff successfully presents a *prima facie* case, the burden shifts to the employer to provide a "legitimate, non-retaliatory reason for the adverse employment action." *Id.* If the defendant presents evidence that supports that it acted properly, the plaintiff must show that the adverse employment action would not have occurred "but for" the protected activity. *Univ. of Texas S.W. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013) ("Title VII retaliation claims must be proved according to traditional principles of but-for causation .... This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer."). Plaintiff alleges four adverse employment actions: failure to promote her to state dental director; failure to promote her to area dental director; reprimanding her for leaving work early to close on her house; and termination five weeks before her voluntary resignation date.

I. *State Dental Director*

Plaintiff claims that Vieth made her a State Dental Director when she came to Lafayette in July 2010. *R. 29-4, Plaintiff's Depo., p.190:21-24.* Plaintiff's offer letter, however, makes no mention of her role as a state dental director. *R. 29-27, Plaintiff's Offer Letter for Associate Dentist.* Nor does the record contain any business records to support that she was hired for the position. *R. 29-7, Thompson Dec.* Rather, Vieth denies the allegation stating that Kool Smiles did not have state dental directors in Louisiana at the time plaintiff came to Louisiana because operations in the state

10

were just beginning. *R. 29-3, Vieth Dec.* The record indicates that while Vieth considered plaintiff as a candidate for the state dental director's position in South Louisiana, he did not hire her because of the issues that had arisen in the Lafayette clinic. When plaintiff applied for the Area Dental Director position in early 2011, Andrea Jett stated in a March 28, 2011 email to Vieth that plaintiff was not "really ready for this level of leadership role" but would be a "potential candidate[] for State Dental Director." *R. 29-3, Exh. A.*

Vieth chose not to have a state dental director in Louisiana until late June 2011. *R. 29-3, Vieth Dec.* On June 23rd, Dr. Yalice Cardona, an Hispanic female with young children based in the Monroe clinic, was named State Dental Director in north Louisiana which had the greater need for new doctor training. *Id.* While plaintiff worked for defendant, there was no State Dental Director assigned to south Louisiana. *Id.* Vieth's declaration is further supported by the fact that, in her deposition, plaintiff could not identify anyone she would have trained during her employment and has failed to provide any such evidence in the record. *R. 29-4, Plaintiff's Depo., pp. 193:22-194:13, 195:25-196:3.* The only evidence provided by plaintiff is inadmissible hearsay which is other wise unsubstantiated and cannot serve as competent evidence capable of precluding summary judgment.[3]

ii. *Area Dental Director*

Plaintiff alleges she was not offered the Area Dental Director job because of pregnancy discrimination and retaliation. As provided in the foregoing, the record indicates Vieth interviewed Mitchell and Donato for the job. *R. 29-3, Vieth Dec.* On March 28, 2011, Vieth sent an email to Jett notifying her that he was not going to hire either Donato or Mitchell for the position because he did not believe either was qualified. *Id., 3/28/11 email.* The job remained open until September 2011, when it was filled by Dr. Steele Battier, an African-American female. *Id., R. 29-13, 9/2/11 email.* Plaintiff had already submitted her resignation. *R. 29-4, Plaintiff's Depo., pp. 271:21-272:3.* As Vieth did not learn about plaintiff's complaint against Kim until the end of May 2011 plaintiff's

---

[3] In her deposition, Kayla Broussard stated that when she was introduced to plaintiff Vieth "did say she [plaintiff] was state director meaning like she would overlook all the offices in the state." *R. 62-6, Broussard Depo., pp. 71:16- 72:2.* The declaration of Takara Johnson states, "Dr. Veith [*sic*] introduced Dr. Mitchell as the State Dental Director." *R. 62-15, Johnson Dec.*

**11**

engaging in protected activity could not have been the *but for* cause of his decision not to promote her two months earlier in March.

### iii. Written Reprimand

Plaintiff submitted her 90-day notice of resignation on August 29, 2011. *R. 29-3, Vieth Dec.* On October 5, 2011, plaintiff sent an email to Dr. Steele Battier, her direct supervisor, at 3:04 pm stating she was leaving work, "… I need to leave to make an appointment. I tried to reschedule it during my lunch break, but we ran over. We finished at approximately 1:50. I will be out for the remainder of the afternoon."[4] *R. 29-30, Email.* Plaintiff admittedly failed to follow defendant's PTO policy requiring scheduling of non-emergency absences in advance. *R. 29-10, PTO policy; R. 29-4, Plaintiff's. Depo., pp. 167:12-22, 169:5-8.* At Vieth's direction, plaintiff was issued a final written warning on October 11, 2011. *R. 12-3, Vieth Dec., written warning.*

Even though the warning came more than four months after Vieth learned of plaintiff's allegations against Kim, plaintiff offers only the timing of the discipline as her evidence that it was retaliatory. Even if timing could establish a *prima facie* case, it cannot establish the requisite but for causation necessary to prevail on a retaliation claim. The Fifth Circuit has strongly held that timing alone is never sufficient. *Strong v. Univ. Healthcare Sys., LLC*, 482 F.3d 802, 808 (5th Cir. 2007) ("To prevent future litigants from relying on temporal proximity alone to establish but for causation, we once again attempt to clarify the issue…we affirmatively reject the notion that temporal proximity standing alone can be sufficient but for causation."). Accordingly, plaintiff can not sustain a retaliation claim based on the October 11, 2011 final warning.

### iv. Termination

Finally, plaintiff claims that Vieth's decision to terminate her was retaliatory. The termination occurred five months after her complaint about Kim, eight weeks after she gave notice of her voluntary resignation, and five weeks prior to her self-selected resignation date. *R. 29-4, Plaintiff's Depo., pp. 77:18-22, 180:23-181:5.* Subsequent to the final warning on October 11,

---

[4] Vieth later learned plaintiff left to close on the transaction of a house. *R. 29-3, Vieth Dec.*

Vieth received additional complaints about plaintiff from Renee Baron, the recruiter and Manager of Doctor Staffing, and Tina Posey, the Lafayette Office Manager. The complaints included that plaintiff was displaying a negative attitude about the Company in front of prospective doctors; was openly discussing starting her own practice; refusing to treat two patients and left another on nitrous oxide too long causing the child to become ill; was late returning from lunch; and was dragging down the cycle times by talking on her cell phone, surfing the Internet or talking with the staff. *R. 29- 31, Baron Dec.; R. 29-32, Posey Dec., Exh. A & B; R. 29-3, Vieth Dec.* Vieth decided to terminate plaintiff's employment prior to her voluntary resignation period. While plaintiff argues all of these reports were inaccurate, she offers nothing to support the conclusion that Vieth knew the complaints were inaccurate or seized on them as an excuse to retaliate against her. Based on the substantial evidence in the record, plaintiff can not overcome Vieth's reasonable belief that his basis for termination was justified. *See Little v. Republic Refining Co.,* 924 F.2d 93, 97 (5th Cir. 1991) ("even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason" for termination).

*Constructive Discharge Claim*

Nor can plaintiff establish a claim for constructive discharge. Stating a claim of constructive discharge under Title VII or section 1981 requires more than stating a racially hostile work environment claim under Title VII or section 1981. *See, e.g., Penn. State Police v. Suders*, 542 U.S. 129, 147–48 (2004). To prove her claim, plaintiff must demonstrate that working conditions were "so intolerable that a reasonable person would feel compelled to resign." *Faruki v. Parson S.I.P., Inc.,* 123 F.3d 315, 319 (5th Cir.1997). The following factors must be considered: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (6) offers of early retirement that would make the employee worse off. *Aryain v. Wal-Mart Stores*, 534 F.3d 473, 481 (5th Cir. 2008). Plaintiff has failed to prove that any of these factors existed and the evidence in the record does not rise to the level of "badgering,

harassment, or humiliation." *Reznik v. Assoc. Orthopedics & Sports Medicine*, 104 Fed.Appx. 387, 392-94 (5th Cir. 2004).

*II. ADA Claim*

The ADA prohibits covered employers from "discriminat[ing] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Discrimination includes failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless such covered entity can demonstrate that the accommodation would impose an undue hardship." *Id.* § 12112(b)(5)(A). Thus, a plaintiff must prove the following statutory elements to prevail in a failure-to-accommodate claim: (1) the plaintiff is a "qualified individual with a disability;" (2) the disability and its consequential limitations were "known" by the covered employer; and (3) the employer failed to make "reasonable accommodations" for such known limitations." *Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013).

Plaintiff was diagnosed with Systemic Lupus in 2007, which defendant concedes would qualify as a disability under the ADA. *R. 29-4, Plaintiff's Depo., p. 38:9-19*. In 2009, plaintiff stated on her new hire paperwork that she was not disabled. *R. 29-16; R. 29-4, Plaintiff's Depo., p.60:1-19*. Also, on June 16, 2011, in a Personal Information Survey related to her credentialing report, plaintiff responded she had "No" physical or mental condition that required any accommodation so that she could perform her job. *R. 29-16*. Vieth had knowledge of plaintiff's Lupus, however, because she disclosed this in an email to him on August 25, 2010 in the context of telling him she was pregnant, explaining that she waited to tell him because Lupus patients are high risk for miscarriages. *R. 29-16*. The email, however, contained no request for an accommodation. *Id.*

Plaintiff now contends that because she told Vieth about her Lupus in August 2010, he and the Company should have assumed she needed an accommodation when she asked not to work on Saturdays in 2011. Plaintiff contends the evidence that she requested a reasonable accommodation is found in her emails sent by plaintiff and the Office Manager, Tina Posey, in July. The emails

14

make no mention of such a request nor have anything to do with a disability. *R. 29-19, July 19, 2011 email; R. 29-20, July 22, 2011 email.* Rather, plaintiff stated in the emails she wanted Saturday off because of her infant. *R. 29-20.* Other emails in the record confirm that plaintiff had a history of requesting to work fewer Saturdays and/or have the clinic close earlier well before July. *R. 29-22, December 1, 2010 email; R. 29-23, January 20-22, 2011 email; R. 29-25, May, 26, 2011 report; R. 29-26, July 25, 2011 email.* Moreover, plaintiff admittedly does not have any medical documentation supporting a request for accommodation in July 2011. *R. 29-4, Plaintiff's Depo., p.144:12-15.*

Based on the foregoing, plaintiff never put defendant on notice that she might require a reasonable accommodation due to a disability. Because the ADA requires employers to accommodate the limitations arising from a disability, and not the disability itself, an employee seeking to assert a disability discrimination claim must produce evidence that the employer knew not only of the employee's disability, but also that the physical or mental limitations resulting therefrom required an accommodation. *See* 29 C.F.R. 1630.9. *See also Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 163 (5th Cir.1996) (affirming district court's holding that plaintiff's failure to establish that he had asked for a reasonable accommodation failed to establish a prima facie case because absent request for a reasonable accommodation plaintiff had failed to place employer on notice that his disability required an accommodation). Plaintiff's claim under the ADA must be dismissed.

*IV. Louisiana Whistleblower Claim*

In order to prevail under the Louisiana whistleblower statute, La. R.S. §23:967(A), a claimant must prove that (1) his or her employer violated the law through a prohibited workplace act or practice; (2) the claimant advised the employer of the violation; (3) the claimant refused to participate in the prohibited practice or threatened to disclose the practice; and (4) the claimant was fired as a result of the refusal to participate in the unlawful practice or threat to disclose the practice. *Hale v. Touro Infirmary*, 886 So.2d 1210, 1216 (La.App. 4th Cir., 2004). As plaintiff has not met all of the required elements set out above, she does not have a viable whistleblower claim .

15

*V. Defamation Claim*

In order to maintain an action in defamation against Vieth, the plaintiff must prove the following elements: (1) defamatory words, (2) publication, (3) falsity, (4) malice, actual or implied, and (5) resulting injury. *Brannan v. Wyeth Laboratories, Inc.*, 526 So.2d 1101, 1105 (La.,1988). Plaintiff's Complaint alleged that Baron, Posey and Kim made false states about her to Vieth. *R. 1, Complaint,* ¶¶ *25, 26, 27.*

Plaintiff did not allege that Vieth himself ever published a false statement about her to anyone else nor has she provided any such evidence. Further, plaintiff testified during her deposition that she was not aware of anything Vieth said about her to anyone else which was false. *R. 29-4, Plaintiff's Depo., p. 114:3 - 115:15.* Plaintiff now claims that Vieth relayed to Kool Smiles that she "displayed negative body language and made negative comments about Kool Smiles" and conducted no investigation to "garner the veracity of those statements." *R. 63.* Plaintiff cites no case law in support of her position, and fails to illustrate each required element of defamation under *Brannan*. Nor has plaintiff cited any evidence in the record to indicate the information was circulated outside the defendant's corporation. "Statements between employees, made within the course and scope of their employment, are not statements communicated or publicized to third persons so as to constitute a 'publication.'" *Marshall v. Circle K Corp.*, 715 F. Supp. 1341, 1344 (M.D. La. 1989). Plaintiff's defamation claim against Vieth will be dismissed.

*B. The Motion For Summary Judgment As To Defendant's Counterclaim*

Kool Smiles moves the Court to grant the motion as to its claim against plaintiff for breach of contract and grant it all relief to which it is entitled under the terms of the contract. On May 18, 2010, plaintiff signed a Bonus and Repayment Agreement with a Promissory Note in connection with her transfer from the clinic in Fort Smith to the Clinic in Lafayette. *R. 31-3.* In her deposition testimony, plaintiff confirmed she knew if she "left before July of 2012 ... [she] would have to return the bonus, as well as the relocation expenses." *R. 29-4, Plaintiff's Depo., pp. 73:17 - 78:1.* In exchange for signing the Agreement, plaintiff

received a $30,000.00 signing bonus and $6,036.67 in relocation assistance. *Id., pp. 82:16 - 83:5*. Plaintiff conceded that the Agreement obligated her to work for Kool Smiles for two years, until at least July 12, 2012, and she agreed, "that should the Employee's employment with Kool Smiles, PC terminate, for any reason, at any time before the expiration of the Two-year Period, then such termination shall constitute a default under this Agreement." *Id., pp. 77:8 - 78:1; Exh. 1*.

The record is clear that plaintiff submitted a 90-day notice of resignation on August 29, 2011 and that she was terminated on October 25, 2011, both before the expiration of the two-year period. *R. 31-6; R. 29-4, Plaintiff's Depo., p.103:18*. Pursuant to the terms of the Agreement defendant is entitled to recovery of the base amount, plus "default interest"[5] and reasonable attorneys' fees and court costs associated with its collection efforts. *R. 31-3, Bonus and Repayment Agreement; Id., Exh. A, Promissory Note*. Despite the Company's notices to plaintiff that she would be required to pay back the signing bonus and relocation assistance in accordance with the Agreement, she has not done so. *R. 31-7, Vieth Dec.; R. 31-8, 4/18/12 letter, R. 29-4, Plaintiff's Depo., pp. 81:18-21*. Defendant represents and plaintiff does not dispute that the base amount owed is $26,620.30 plus interest in the amount of $1,735.13 and attorneys' fees in the amount of $1,500.00. *R. 31-10, Affidavit*.

In her opposition to the motion, plaintiff states that the Agreement is not enforceable because of the "discrimination and retaliation in the workplace" stated in her opposition to the Company's motion for summary judgment. *R. 64*. The Court has found that plaintiff has failed to establish any such claims against the Company. Accordingly, defendant's

---

[5] The Promissory Note defines "Default Interest" as, "[u]pon the occurrence of an Event of Default, the undersigned shall pay interest on the unpaid Principal Amount. The interest shall be calculated on the basis of a 360-day year for the actual number of days elapsed since such Event of Default as a per annum rate equal to the Prime Rate as quoted by the Wall Street Journal Eastern Edition ... on the immediately preceding business day after such Event of Default." *R. 31-3, Exh. A*.

motion for summary judgment on the Counterclaim will be granted.

## Conclusion

Based on the foregoing, the Court will grant David M. Vieth, D.D.S., APC d/b/a Kool Smiles' Motion For Summary Judgment and David M. Vieth's Motion For Summary Judgment and dismiss plaintiff's claims in their entirety. The Court will also grant the Motion For Summary Judgment On Its Counterclaim filed by defendant Kool Smiles.

_____
Richard T. Haik, Sr.